

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Migdalia Báez Rodríguez y otros<br><br>    Peticionarios<br><br>        v.<br><br>Hon. Luis Fortuño, Gobernador del E.L.A.; y otros<br><br>    Recurridos | Certiorari<br><br>2010 TSPR 87<br><br>179 DPR ____ |

Número del Caso: CC-2009-971

Fecha: 9 de junio de 2010

Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel III

Juez Ponente:

        Hon. Héctor Cordero Vázquez

Abogada de la parte peticionaria:

        Lcda. Crisanta González Seda

Oficina de la Procuradora General:

        Lcda. Valerie Díaz Aponte
        Procuradora General Auxiliar

Materia: Petición de Entredicho Provisional e Inter    dicto
        Permanente

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónic   a se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Migdalia Báez Rodríguez,<br>Marisol Vázquez Agosto,<br>Frank Padilla Carrasquillo,<br>Víctor M. Vega Báez,<br>Ángel R. Acosta Castillo,<br>José Alberto Lugo Domínguez<br><br>    Peticionarios<br><br>        v.<br><br>Hon. Luis Fortuño, Gobernador<br>del E.L.A.; Junta de<br>Reestructuración y<br>Estabilización Fiscal (JREF),<br>Dra. María S. Conte,<br>Directora Ejecutiva Instituto<br>de Ciencias Forenses de PR;<br>Junta Directora del Instituto<br>de Ciencias Forenses<br>representada por su Presidente,<br>el Hon. Secretario de Justicia<br><br>    Recurridos | CC-2009-971 | |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 9 de junio de 2010.

La controversia ante nuestra consideración está relacionada con las medidas de reducción de gastos gubernamentales establecidas en la Ley Núm. 7 de 9 de marzo de 2009, según enmendada. Ley Especial Declarando Estado de Emergencia Fiscal para Salvar el Crédito de Puerto Rico, cuya constitucionalidad fue evaluada y sustentada recientemente en Domínguez Castro v. Fortuño, Op. de 2 de febrero de 2010, 2010 T.S.P.R. 11, 2010

J.T.S. __, 177 D.P.R. __ (2010). En esta ocasión, debemos dirimir si los peticionarios, empleados del Instituto de Ciencias Forenses de Puerto Rico, están exentos del plan de cesantías dispuesto en la Ley Núm. 7, supra, según enmendada por la Ley Núm. 37 de 10 de julio de 2009. Respondemos esta interrogante en la afirmativa.[1]

I

La Sra. Migdalia Báez Rodríguez, la Sra. Marisol Vázquez Agosto, el Sr. Frank Padilla Carrasquillo, el Sr. Víctor M. Vega Báez, el Sr. Ángel R. Acosta Castillo y el Sr. José A. Lugo Domínguez son empleados de carrera del Instituto de Ciencias Forenses de Puerto Rico. Estos seis empleados tienen puestos clasificados como Coordinadores de Pruebas de Detección de Sustancias Controladas y otras Pruebas Especiales en el Instituto de Ciencias Forenses de Puerto Rico. Según surge de la hoja de descripción del puesto que obra en el expediente, las funciones de estos empleados consisten en: coordinar las actividades que se desarrollan el día de la toma de muestras de sustancias controladas y alcohol a los(las)empleados(as) y otras personas, tomar

---

[1] Mediante Opinión emitida el día de hoy, analizamos las mismas disposiciones de ley para concluir que varios empleados de la Administración de Instituciones Juveniles no están exentos del plan de cesantías dispuesto en la Ley Núm. 7, supra. Véase, Negrón Matos y otros v. E.L.A., CT-2009-08, Op. de 9 de junio de 2010, 2010 T.S.P.R. ___, ___ D.P.R. ___ (2010.

muestras de aliento para alcohol, tomar muestras de cabello y bucal para A.D.N., tomar huellas dactilares, recibir la muestra y verificar el colector, en unión al(la)empleado(a) muestreado, sellar la muestra y luego estampar sus iniciales, custodiar las muestras recibidas en el lugar de la toma, levantar un acta que recoge todas las incidencias del proceso, comparecer cuando se le solicita, como testigo o perito, a los foros administrativos y judiciales en los casos presentados relacionados con las muestras tomadas, así como presentar escritos y documentos en los tribunales y en los foros administrativos. Véase, Apéndice de la Petición de *Certiorari*, pág. 79-80.

En septiembre de 2009, los peticionarios recibieron unas misivas en las que se les informó que quedarían cesantes de sus puestos en virtud de la aprobación de la Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito, supra. (Ley Núm. 7). En dichas cartas se les informó, entre otras cosas, la razón de su despido. Además se les notificó de su derecho a solicitar revisión de la determinación de la agencia ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos (C.A.S.A.R.H.), o en el caso de ser empleados unionados, ante la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). Una vez notificados de las cesantías, los peticionarios

presentaron la demanda que da lugar a la presente controversia en la que alegaron que las cesantías violan lo dispuesto en el Artículo 37.02 de la Ley Núm. 7, supra, según enmendada. Los peticionarios arguyeron que el referido artículo excluye de la aplicación de las cesantías involuntarias a los patólogos, peritos y técnicos del Instituto de Ciencias Forenses de Puerto Rico.

Por lo anterior, los peticionarios solicitaron al Tribunal de Primera Instancia que dejara sin efecto las cesantías impugnadas. Dicho foro ordenó a la parte recurrida, que mostrara causa por la cual no se debía conceder el remedio solicitado. En cumplimiento con la referida orden, la parte recurrida presentó un escrito en el que arguyó que las cesantías se realizaron conforme a derecho. Sostuvo que el Artículo 37.02 de la Ley Núm. 7, id., le confiere discreción a la Junta de Reestructuración y Estabilización Fiscal (J.R.E.F.) para determinar cuáles empleados, de los renglones allí establecidos, están excluidos de la aplicación del plan de cesantías. Conforme con esta alegación, la parte recurrida arguyó que procedían las cesantías de los peticionarios ya que la J.R.E.F. no determinó que los peticionarios realizaban funciones esenciales de protección, seguridad, enseñanza, salud y bienestar, por lo que no estaban exentos de la aplicación del plan de cesantías. Luego de evaluar los escritos de las partes,

el Tribunal de Primera Instancia declaró con lugar la demanda y dejó sin efecto las cesantías impugnadas.

Por lo anterior, la parte recurrida presentó un recurso de apelación ante el Tribunal de Apelaciones en el que arguyó que erró el Tribunal de Primera Instancia al dejar sin efecto las cesantías. Por un lado, la parte recurrida argumentó que el Tribunal de Primera Instancia no tenía jurisdicción para atender los reclamos relacionados con una acción o decisión tomada conforme con el Capítulo III de la Ley Núm. 7, id. Sostuvo que la jurisdicción para atender los planteamientos respecto a las acciones o decisiones tomadas en virtud de la Ley Núm.7, id., la ostenta la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (C.A.S.A.R.H.) o, en el caso de los empleados unionados, la Comisión de Relaciones del Trabajo del Servicio Público. Además, los recurridos señalaron que erró el Tribunal de Primera Instancia al entender que los peticionarios están excluidos de la aplicación del plan de cesantías, ya que la ley le confiere discreción a la J.R.E.F. para determinar cuáles empleados son esenciales para el funcionamiento del gobierno y, por tanto, cuáles están exentos de la aplicación de la Ley Núm. 7, ibid.

Luego de evaluar los escritos de las partes, el Tribunal de Apelaciones acogió la argumentación de la parte recurrida, revocó la determinación del Tribunal de

Primera Instancia y desestimó la demanda incoada por falta de jurisdicción. Inconformes, los peticionarios presentaron el recurso de *certiorari* que nos ocupa. Le concedimos un término a la parte recurrida para que se expresara sobre los méritos de la petición de *certioari*. Tomando en consideración los argumentos de ambas partes, procedemos a evaluar los planteamientos ante nuestra consideración.

II

Como cuestión de umbral, nos corresponde auscultar el planteamiento jurisdiccional. En el ámbito del derecho administrativo surge el problema de determinar cuál es el foro, ya sea el judicial o el administrativo, que debe adjudicar el asunto en controversia. La doctrina de jurisdicción primaria atiende el problema de determinar cuál es el foro con jurisdicción para ventilar una controversia en primera instancia. Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906, 921 (2001); Mun. de Caguas v. AT&T, 154 D.P.R. 401, 410 (2001); a modo ilustrativo véase, B. Schwartz, Administrative Law, 3ra ed., Boston, Ed. Little, Brown and Company, 1991, p.524. Dicha doctrina fue confeccionada jurisprudencialmente para "ofrecerle guía y orientación a los tribunales en la determinación de cuándo deben abstenerse de ejercer jurisdicción hasta tanto la agencia resuelva". D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed.,

Colombia, Forum, 2001, pág. 434. Conforme con lo anterior, la doctrina de jurisdicción primaria aplica verdaderamente cuando hay jurisdicción concurrente entre el foro administrativo y el judicial. Véase, Ortiz v. Panel F.E.I., 155 D.P.R. 219, 243 (2001); Aguilú v. P.R. Parking, 122 D.P.R. 261, 266 (1988) Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398, 402 (1980). Esto significa que ambos foros poseen jurisdicción legal para atender la controversia. Sin embargo, el foro judicial le otorga deferencia al organismo administrativo para atender la controversia por entender que las agencias están "mejor equipadas que los tribunales debido a su especialización y al conocimiento obtenido a través de la experiencia". Ortiz v. Panel F.E.I., supra; véase, además, Fernández Quiñones, op. cit., pág. 434-435.

Conforme con lo anterior, los jueces deben aplicar esta norma de abstención, como regla general, "en casos en los cuales el peritaje de la agencia sea indispensable para resolver la controversia, ya que los `tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas´". Ortiz v. Panel F.E.I., supra, a la pág. 244; Quiñónez v. A.C.A.A., 102 D.P.R. 746, 749-50 (1974). Esto surge cuando las cuestiones de hecho que han de ser consideradas requieren el ejercicio de la discreción adjudicativa o aplicación del conocimiento especializado que la agencia posee. Véase, Asoc. Pesc. Pta. Figueras, v. Marina de Pto. del Rey, 155 D.P.R. 906,

921 (2001). Por tanto, si las controversias presentadas ante el foro judicial no requieren el peritaje o el conocimiento especializado de la agencia, el foro judicial no tiene por qué abstenerse de ejercer su autoridad ordinaria para atender el asunto ante su consideración.

Ahora bien, cuando la ley de la agencia le confiere expresamente la jurisdicción al ente administrativo, entonces se trata de una jurisdicción exclusiva o estatutaria. Véase, Fernández Quiñones, op. cit., pág. 437. La jurisdicción exclusiva impide la aplicación de la **doctrina de jurisdicción primaria concurrente** debido a que la propia ley aclara que no existe esta última. Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257, 268 (1996). En otras palabras, el legislador expresamente le confirió la jurisdicción exclusiva al ente administrativo. Colón v. Méndez, 130 D.P.R. 433, 442 (1992); véase, además, Fernández Quiñones, op. cit., pág. 438. En tales casos, estamos frente a un mandato legislativo y no frente a una doctrina de índole jurisprudencial. Rivera Ortiz v. Municipio de Guaynabo, supra. De ahí, que cuando la ley habilitadora le confiere de manera expresa la jurisdicción a un ente administrativo sobre determinado tipo de asuntos, los tribunales no tendrán autoridad para dilucidar el caso en primera instancia. Íd. Véase, además, Municipio Arecibo v. Municipio Quebradillas, 163 D.P.R. 308, 327 (2004).

Para determinar si la ley le confiere o no jurisdicción exclusiva a un organismo administrativo, hemos expresado que aun cuando la designación de jurisdicción exclusiva debe ser clara y precisa, el legislador no siempre utiliza el término "exclusiva". Rivera Ortiz v. Municipio de Guaynabo, supra, págs. 270-271. Cónsono con lo anterior, en Junta de Directores Condominio Monte Bello v. Fernández, 136 D.P.R. 223, 230 (1994) señalamos que "[p]ara privar a un tribunal de jurisdicción general de su autoridad para entender en algún asunto en particular, es necesario que así se haya dispuesto expresamente en algún estatuto o que ello surja del mismo por implicación necesaria". Por último, es meritorio señalar que la jurisdicción exclusiva no soslaya la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo. Rivera Ortiz v. Municipio de Guaynabo, supra, pág. 268; Junta de Directores v. Fernández, 136 D.P.R. 223, 233 (1994).

Conforme con la norma discutida, debemos determinar si C.A.S.A.R.H. y la Comisión de Relaciones del Trabajo para el Servicio Público creada bajo la Ley Núm. 45, supra, tienen jurisdicción exclusiva para atender los asuntos relacionados a las cesantías de los empleados públicos y, de tenerla, cuál sería su alcance.

III

El Artículo 46(a) de la Ley Núm. 7, <u>supra</u>, dispone lo siguiente:

> Artículo 46- Interés Público y foro para dirimir controversias.
> Si bien los asuntos aquí contenidos están revestidos de gran interés público, es importante además velar por los derechos de los empleados afectados en cuanto a las acciones a tomarse conforme a lo dispuesto en este Capítulo III, y así brindarles la oportunidad de lograr una solución rápida y justa de sus reclamaciones:
>
> > (a) **La CASARH tendrá jurisdicción para atender apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este Capítulo III, en todo aquello que no conflija con éste,** de aquellos empleados no cubiertos por las disposiciones de la "Ley de Relaciones del Trabajo para Servicio Público", Ley Núm. 45 del 25 de febrero de 1998, según enmendada. Tendrá asimismo, jurisdicción apelativa voluntaria sobre los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de las disposiciones de la "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico de 2004", en cuanto a apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este Capítulo III, **en todo aquello que no conflija con este último.** Los procedimientos ante la CASARH se regirán por lo dispuesto en la Ley Núm. 184 del 3 de agosto de 2004, según enmendada, y su reglamento. (Énfasis nuestro).

Luego de una lectura de esta disposición, surge que el legislador le confirió jurisdicción al organismo administrativo para atender ciertos asuntos relacionados con la aplicación de la Ley Núm. 7, <u>supra</u>. Sin embargo, en el referido texto se enfatiza que

C.A.S.A.R.H. solamente tendrá jurisdicción en aquellas apelaciones que no estén en conflicto con lo dispuesto en el Capítulo III. Esto quiere decir que la concesión de jurisdicción al ente administrativo no fue absoluta, por lo que es necesario referirnos a las disposiciones del referido Capítulo III para poder determinar el alcance de la facultad conferida.

Al respecto, el Artículo 37.04 (b)(13)del Capítulo III de la Ley Núm. 7, *supra*, dispone lo siguiente:

> El empleado afectado podrá solicitar revisión de la determinación final tomada por la Agencia, **solamente en cuanto a su antigüedad ante la CASARH,** en conformidad a lo dispuesto por el Artículo 13, sección 13.14, de la Ley Núm. 184 del 3 de agosto de 2004, y su reglamento. Art. 37.04(b)(13). (Énfasis nuestro).

De igual forma, respecto a los empleados unionados, el Art. 37.04(b)(14) de la Ley Núm. 7, *supra*, establece que:

> Aquellos empleados que sean miembros de una unidad apropiada, afiliados o no a una organización sindical, podrán revisar la determinación tomada final por la Agencia, **solamente en cuanto a su antigüedad, mediante una petición que a esos efectos presenten a los árbitros de la Comisión,** creada al amparo de la Ley Núm. 45 del 25 de febrero de 1998, en un término no mayor de treinta (30) días calendario del recibo de la notificación de la Agencia. (Énfasis nuestro).

Al analizar estas disposiciones en armonía con el Artículo 46 de la Ley Núm. 7, *supra*, se desprende que tanto C.A.S.A.R.H. como la Comisión creada bajo la Ley Núm. 45, *supra*, tendrán jurisdicción exclusiva para atender aquellas apelaciones en las que se cuestionen

asuntos sobre la antigüedad de los empleados cesanteados. Aunque el legislador no utilizó específicamente el término "exclusivo", de las disposiciones antes interpretadas surge "por implicación necesaria" la designación de C.A.S.A.R.H. y la Comisión como los organismos administrativos apelativos designados por el legislador para atender las controversias relacionadas a asuntos de antigüedad. Cabe señalar que la C.A.S.A.R.H. es un organismo que se creó para atender los asuntos referentes a las áreas esenciales del sistema de recursos humanos. Véase, Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 del 3 de agosto de 2004, 3 L.P.R.A. sec. 1468 (l). El legislador, tomando en consideración la pericia de este organismo apelativo sobre los asuntos de recursos humanos, le confirió a dicho ente la jurisdicción exclusiva para atender las controversias relacionadas a la antigüedad de los empleados.

A base de esta interpretación, resolvemos que la Ley Núm. 7, supra, sustrajo de la jurisdicción ordinaria de los tribunales solamente aquellas controversias relacionadas a la antigüedad de los empleados. Véase, Domínguez Castro v. Fortuño, supra. Cuando las controversias no se limiten a cuestiones de antigüedad, los tribunales tienen autoridad para ejercer su facultad jurisdiccional.

Conforme con lo anterior, sostenemos que este Foro tiene jurisdicción para resolver la controversia que dio lugar a este recurso. Los planteamientos esbozados en el recurso ante nuestra consideración no se ciñen a cuestionamientos sobre la antigüedad de los empleados cesanteados. Por el contrario, la controversia planteada es un asunto de estricto derecho que requiere interpretar el alcance de las exclusiones a la aplicación del plan de cesantías establecido en la Ley Núm. 7, supra. Resuelto esto, procedemos a determinar si los peticionarios están excluidos del plan de cesantías establecido mediante la Ley Núm. 7, supra, y si la J.R.E.F. actuó en contravención a la citada ley al incluirlos en el grupo de empleados cesanteados.

IV

Este Foro ha establecido, como principio rector en materia de hermenéutica, que al interpretar una disposición específica de una ley los tribunales debemos considerar los propósitos perseguidos por el legislador al aprobar la norma y "nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener". Véase, Morell et al. v. Ojeda et al., 151 D.P.R. 864 (2000); Chase Manhattan Bank v. Mun. De San Juan, 126 D.P.R. 759, 766 (1990). De esta forma, nuestra obligación consiste en imprimirle efectividad a la intención del legislador y así garantizar que se cumpla con el propósito para el cual

fue creada la medida. Vázquez v. ARPE, 128 D.P.R. 513, 523 (1991).

Según dispone el Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14, "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". En virtud de dicha regla de hermenéutica, al interpretar un estatuto, como cuestión de umbral, debemos remitirnos al texto de la ley. Esto responde a que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Véase, Malavé v. Oriental, 167 D.P.R. 593 (2006); Ortiz v. Municipio de San Juan, 167 D.P.R. 609 (2006). Conforme con lo anterior, cuando una ley es clara y no es ambigua "no hay necesidad de mirar más allá de la letra en búsqueda de la intención legislativa". Rosario v. Distribuidora Kikuet, Inc., 151 D.P.R. 634, 643 (2000).

Ahora bien, si la letra de la ley no es clara y una aplicación literal llevaría a un resultado absurdo o contrario a la verdadera intención o propósito del legislador, "la literalidad puede ser ignorada". Morell et al. v. Ojeda et al., supra; Clínica Juliá v. sec. De Hacienda, 76 D.P.R. 509, 520 (1954). En estas circunstancias podemos recurrir a las fuentes extrínsecas que existen para interpretar la ley, entre las que se encuentran el historial legislativo de la medida.

Por último, cabe señalar que cuando el objeto de interpretación es una enmienda a la ley, debemos siempre tener en cuenta que no podemos imputarle a la Asamblea Legislativa la realización de un acto inútil al haberla aprobado. Flamboyán Gardens v. Junta de Planificación, 103 D.P.R. 884 (1975). A la luz de estos principios de hermenéutica, procedemos a resolver la controversia en cuestión.

V

La Asamblea Legislativa aprobó la Ley Núm. 7, para declarar un estado de emergencia fiscal y establecer un plan integral de estabilización fiscal para salvar el crédito de Puerto Rico. El propósito de esta legislación es atender, con carácter de urgencia, la crisis fiscal que afecta al Gobierno de Puerto Rico. Para lograr esto, dicha disposición incluye ciertas medidas de carácter financiero y otras dirigidas a reducir los gastos gubernamentales.

En el Capítulo III de dicha pieza legislativa se establece un plan de tres fases con el propósito de reducir los gastos gubernamentales. Entre estos gastos se incluyen los directamente relacionados con la nómina de los empleados del servicio público. La Fase II, eje central de la controversia que nos ocupa, constituye un plan de cesantías de empleados en el servicio público. Dicha ley dispone que este plan de cesantías sólo podrá aplicarse a las agencias y empleados que no estén

excluidos por el Artículo 37.02 de la referida pieza legislativa. Al aprobarse la ley original, el Artículo 37.02 disponía lo siguiente:

Artículo 37.02-Exclusión de la aplicación de la Fase II

A fin de evitar un impacto negativo en los servicios brindados por el Gobierno en cumplimiento con lo dispuesto en el Artículo 2 de esta Ley, **estarán exentos de las disposiciones del Artículo 37 de este Capítulo III los siguientes empleados de las Agencias comprendidas en este Ley, los cuales llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar:**
(a) policías y bomberos
(b) oficiales de corrección y oficiales juveniles;
(c) maestros asignados al salón de clases;
(d) bibliotecarios de escuela;
(e) profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio);
(f) trabajadores sociales;
(g) operadores del sistema de llamadas de emergencia 911; y
**(h) patólogos del Instituto de Ciencias Forenses.** (Énfasis nuestro).

Según surge del texto citado, el legislador determinó que era necesario excluir de la aplicación de la Ley Núm. 7, supra, a ciertos empleados públicos que llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar del Pueblo. Como bien se desprende del texto citado, la enumeración de ocho (8) categorías de empleados exentos era de naturaleza taxativa.

Al paso de unos meses, esta disposición fue enmendada por la Ley Núm. 37 de 10 de julio de 2009. De la exposición de motivos de esta enmienda, surge que el

legislador entendió necesario enmendar el texto original para aclarar las disposiciones de la Ley Núm. 7, supra, y así garantizar la protección de los mejores intereses del Pueblo de Puerto Rico. Así lee la exposición de motivos:

> […] Es responsabilidad de esta Asamblea Legislativa velar porque las medidas que componen las Fases I, II, y III del referido Capítulo [Capítulo III] se implanten de una manera eficiente y responsable, cónsonas plenamente con los objetivos de política pública de esta ley, según dispuestos en su artículo 2. Por lo tanto, resulta menester realizar aquellas enmiendas que aclaren la Ley Núm. 7, garantizando de esta manera que se protejan los mejores intereses del pueblo de Puerto Rico.

Respecto a la enmienda ante nuestra consideración, se expresó que:

> En cuanto al Capítulo III, las enmiendas que se incluyen consisten principalmente en (1) **aclaraciones para que el texto corresponda con mayor especificidad a la intención legislativa** y (2) extender la fecha de vigencia de los convenios colectivos expirados o que expiren durante la vigencia de la Ley, hasta el 9 de marzo de 2011. (Énfasis nuestro).

De esta porción de la exposición de motivos de la Ley Núm. 37, supra, podemos colegir que el legislador quiso modificar el texto original para que éste correspondiera a la verdadera intención legislativa que le motivó a crear ciertas exclusiones a la aplicación de la Ley Núm. 7 de 2009, supra. Las expresiones de la Hon. Jennifer González, Presidenta de la Cámara de Representantes, reafirman esta interpretación:

Por eso, hoy anunciamos enmiendas adicionales a la Ley 7, **para aumentar la exclusión de empleados en algunos renglones**[…]

Estamos excluyendo de la ley 7, entiéndase de posibles cesantías correspondientes a la fase 2 y a la fase 3, a los agentes del Cuerpo de Vigilantes, a los agentes del Negociado de Investigaciones Especiales, a la Oficina del Fiscal Especial Independiente, a la Oficina de Servicios con Antelación al Juicio. Y muchos se preguntaran, por qué las exclusiones a estos empleados y me parece bien sencilla la contestación. Son agencias de seguridad pública que en estos momentos, donde la criminalidad ha aumentado dramáticamente, el Estado no puede dejar [des]provisto ese servicio y necesita redoblar los esfuerzos en esas áreas, por lo que nosotros estamos dándoles, no solamente las herramientas en estas exclusiones para que esos empleados continúen haciendo el trabajo importante en el área de seguridad pública, sino también en la próxima asignación de presupuesto que estaremos haciendo el lunes donde hemos identificado fondos adicionales para que estas agencias de gobierno puedan seguir defendiendo a Puerto Rico y no poniendo en precario la seguridad de todos los puertorriqueños.

**Adicional a esto, excluimos de la Ley 7 a los miembros de la Junta de Libertad Bajo Palabra, a los oficiales de Corrección, y bien importante, a los patólogos, personal pericial y técnico del Instituto de Ciencias Forenses, que son precisamente la gente que ayuda en el esclarecimiento del cien por cien de los casos** […]. (Énfasis nuestro).

Luego de la enmienda, el Artículo 37.02 lee así:

A fin de evitar un impacto negativo en los servicios brindados por el Gobierno, y en cumplimiento con lo dispuesto en el Artículo 2 de esta Ley, estarán exentos de las cesantías de la presente ley los empleados de las agencias que según sus clasificaciones llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar, **según serán definidos por la JREF, tales como:**

   a. policías y bomberos, agentes del cuerpo de Vigilantes, agentes del Negociado de

Investigaciones Especiales y la Oficina del fiscal especial Independiente;

b. oficiales de corrección y oficiales juveniles;

c. maestros asignados al salón de clases, incluyendo los transitorios durante el año escolar;

d. Directores, bibliotecarios, orientadores y empleados de comedores adscritos al Departamento de Educación;

e. Maestros del Conservatorio de Música de Puerto Rico y de la escuela de Artes Plásticas;

f. Profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio);

g. Trabajadores sociales;

h. Operadores del sistema de llamadas de emergencia 911;

i. **Patólogos, personal pericial y técnicos del Instituto de Ciencias Forenses;**

j. **Empleados de la Comisión de Relaciones del Trabajo de Servicios Públicos y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público;**

k. **Personal de la Oficina de Servicios con Antelación al Juicio;**

l. **Personal del Registro de la Propiedad;**

m. **Personal de la Junta de Libertad Bajo Palabra; y**

n. **Consejeros en Rehabilitación Vocacional y personal de apoyo técnico. (Énfasis nuestro).**

Al analizar en conjunto el texto del Artículo 37.02 de la ley original así como la posterior enmienda a dicho texto, es ineludible concluir que el legislador quiso excluir de la aplicación del plan de cesantías a aquellos empleados que brindan servicios esenciales relacionados con asuntos de seguridad, enseñanza, salud y bienestar al Pueblo de Puerto Rico. En el texto original se dispuso un listado taxativo de ocho categorías de puestos exentos. Sin embargo, según surge del historial legislativo, el

legislador entendió necesario aumentar las exenciones a ciertos puestos que son esenciales para el funcionamiento de nuestro sistema de gobierno. Con esta enmienda se aumentó el número de categorías expresamente excluidas de ocho a catorce.

Lo anterior significa que la enmienda al texto original logró lo siguiente: (1) añadir expresamente otros puestos al listado de aquellos empleados a los cuales no aplicaría el plan de cesantías porque a través de sus puestos ejercen funciones esenciales relacionados con la seguridad, enseñanza, salud y bienestar; (2) añadió la frase "tales como" para aclarar que la lista es *numerus apertus;* y (3) le confirió a la J.R.E.F. autoridad para excluir otros puestos de empleados que realizan funciones de la misma naturaleza de los excluidos por la ley, éstos son, funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar.

De esta forma, el legislador salvaguardó los servicios esenciales del gobierno, ya sea mediante exclusión estatutaria expresa o mediante la determinación que haga la J.R.E.F sobre otros empleados no excluidos expresamente en la referida disposición. Con esta enmienda, el legislador atendió de forma más completa el propósito que dio lugar a la disposición en controversia, esto es, mantener a aquellos empleados que son esenciales para el funcionamiento de los servicios básicos de

seguridad, salud, enseñanza y bienestar del Gobierno de Puerto Rico.

Conforme con lo anterior, la facultad de la J.R.E.F. bajo el Artículo 37.02 se limita a determinar cuáles otros empleados no incluidos en la lista deben ser excluidos de la aplicación de la ley. La J.R.E.F. no puede aplicar el plan de cesantías a aquellos empleados cuyos puestos están incluidos expresamente en los renglones establecidos por el legislador en el Artículo 37.02 de la Ley Núm. 7, _supra_. Una interpretación contraria significaría que la enmienda lo que hizo fue limitar aun más las exclusiones dispuestas por ley al disponer que la JREF es quien determina cuáles empleados dentro de esos renglones están exentos de la aplicación de la Ley Núm. 7, _supra_. Esa interpretación sería contraria a la verdadera intención legislativa que es ampliar la lista de los empleados excluidos del plan de cesantías, debido a que sus funciones son esenciales para el funcionamiento básico del Gobierno de Puerto Rico. Además, haría superfluo el Artículo 37.02, pues la facultad discrecional de J.R.E.F. para identificar cuáles empleados serán cesanteados y cuáles no es la regla general que aplica a todos los demás empleados no incluidos en el artículo 37.02.

Del historial legislativo se desprende que la enmienda permite a la JREF ampliar la lista de empleados exentos. La interpretación de la JREF de que la enmienda

le permite reducir la lista de empleados exentos es contraria al propósito de la enmienda. En otras palabras, como señaló la Presidenta de la Cámara de Representantes, se eximió del plan de cesantías a los patólogos, personal pericial y técnicos del Instituto de Ciencias Forenses, no a algunos de ellos solamente, como sostiene equivocadamente la parte recurrida.

Conforme con esta interpretación, procedemos a determinar si los peticionarios están exentos de la aplicación de la Ley Núm. 7, supra.

VI

Según surge del expediente ante nuestra consideración, los peticionarios son empleados de carrera del Instituto de Ciencias Forenses cuyos puestos están clasificados como Coordinadores de Pruebas de Detección de Sustancias Controladas y Otras Pruebas Especiales. De la hoja de descripción del puesto que obra en el expediente ante nuestra consideración surge que algunos ejemplos de las labores que realizan estos empleados son tomar muestras de aliento para el alcohol, tomar muestras de cabello, huellas dactilares y comparecer como perito a los foros administrativos y judiciales en los casos relacionados con las muestras tomadas. Es decir, estos empleados realizan labores técnicas y de peritaje para el Instituto de Ciencias Forenses.

Conforme con la discusión que antecede, resolvemos que los peticionarios están expresamente protegidos por

la exclusión que se establece en el Artículo 37.02(i) de la Ley Núm. 7, _supra_, según enmendada. Por tanto, actuó correctamente el Tribunal de Primera Instancia al declarar nulos los despidos de los peticionarios.

### VII

Por lo anterior, expedimos el auto de certiorari, revocamos el dictamen del Tribunal de Apelaciones, Región Judicial de San Juan, y reinstalamos el interdicto que dictó el Tribunal de Primera Instancia, Sala de San Juan, a fin de dejar sin efecto los despidos de los peticionarios, porque están expresamente excluidos de la aplicación del plan de cesantías establecido en la Ley Núm. 7, _supra_, según enmendada.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Migdalia Báez Rodríguez, Marisol Vázquez Agosto, Frank Padilla Carrasquillo, Víctor M. Vega Báez, Ángel R. Acosta Castillo, José Alberto Lugo Domínguez<br><br>Peticionarios<br><br>v.<br><br>Hon. Luis Fortuño, Gobernador del E.L.A.; Junta de Reestructuración y Estabilización Fiscal (JREF), Dra. María S. Conte, Directora Ejecutiva Instituto de Ciencias Forenses de PR; Junta Directora del Instituto de Ciencias Forenses representada por su Presidente, el Hon. Secretario de Justicia<br><br>Recurridos | CC-2009-971 |

SENTENCIA

En San Juan, Puerto Rico, a 9 de junio de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, Se expide el auto de *certiorari*, se revoca el dictamen del Tribunal de Apelaciones, Región Judicial de San Juan, y se reinstala el interdicto que dictó el Tribunal de Primera Instancia, Sala de San Juan, a fin de dejar sin efecto los despidos de los peticionarios, porque están expresamente excluidos de la aplicación del plan de cesantías establecido en la Ley Núm. 7, supra, según enmendada.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo