ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| EDAN RIVERA RODRÍGUEZ en su carácter de Secretario del DEPARTAMENTO DEL CONSUMIDOR en beneficio de NORMA I. LIZARDI DEL VALLE<br><br>Parte Recurrida<br><br>V.<br><br>OFFICE 360 LLC H/N/C CAGUAS SENIOR LIVING<br><br>Parte Peticionaria | KLCE202301112 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br><br>CG2022CV03569 (Sala 701)<br><br>Sobre:<br><br>Petición de Hacer Cumplir Orden (DACO-Ley Núm. 5 del 23 de abril de 1973, 3 LPRA 341 E (I) |

Panel integrado por su presidenta, la Jueza Laura Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece ante nos la parte peticionaria Office 360 LLC H/N/C Caguas Senior Living (en adelante, Caguas Senior Living) mediante un recurso de *Certiorari* y nos solicita la revisión de la *Resolución* emitida el 31 de agosto de 2023 y notificada el 8 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).[1] Mediante este dictamen, el TPI declaró No ha Lugar la *Moción de Desestimación* presentada el 23 de febrero de 2023 por Caguas Senior Living.[2]

Por los fundamentos que expondremos, se deniega la expedición del recurso de *Certiorari*.

**-I-**

---

[1] Apéndice del *Certiorari*, pág. 40.
[2] Apéndice del *Certiorari*, págs. 16-20

Número Identificador

RES2023 _____

Según surge del expediente, el 3 de junio de 2022, la Sra. Norma Lizardi Del Valle (en adelante, Sra. Lizardi Del Valle) presentó la Querella Núm. CAG-2022-0003235 ante el Departamento de Asuntos del Consumidor (en adelante, DACo) en contra de Caguas Senior Living.[3] En síntesis, la Sra. Lizardi Del Valle solicitó la devolución de $2,000.00 pagados a Caguas Senior Living por concepto de la mensualidad por el periodo del 17 de mayo de 2022 al 17 de junio de 2022 del hogar de cuido de adultos mayores que dicha compañía opera por concepto de cuido de su esposo.

Luego de varios trámites procesales, se celebró la vista administrativa y, finalmente, el 26 de agosto de 2022, el DACo emitió y notificó una *Resolución* declarando Con Lugar la Querella Núm. CAG-2022-0003235.[4] En su dictamen, el DACo formuló, a base de la prueba presentada por las partes durante la vista, las determinaciones de hechos siguientes:

1. El Querellado es una corporación con fines de lucro, inscrita bajo las Leyes del Estado Libre Asociado, registrada bajo el n[ú]mero 414263 ante el Departamento del Estado. El Querellado opera un centro de cuido para personas de edad avanzada conocido como Caguas Senior Living.

2. La Querellante es ama de casa y residente de Caguas, Puerto Rico. La Querellante está casada con el señor Benito Rodríguez, quien es mayor de edad y tiene un diagnóstico de Alzheimer.

3. Ante la condición de salud y los cuidos continuos que requiere el señor Benito Rodríguez, la Querellante decidió buscar un centro de cuido para su esposo. En vista de ello contrató al Querellado.

4. El centro de cuido que opera el Querellado se encuentra cerca de la residencia de la Querellante, por lo que le resultó de gran agrado a esta, para así poder visitar y atender con mayor facilidad a su esposo, el señor Benito Rodríguez.

5. El 17 de mayo de 2022 la Querellante acudió al centro de cuido para orientarse y contratar los servicios de este. En esa misma fecha firmó un "Compromiso de

---

[3] Apéndice del *Certiorari*, pág. 3.
[4] Apéndice del *Certiorari*, págs. 3-12.

Pago y Acuerdos de Términos de Condiciones" (en lo suceso el "Contrato"). Surge del Contrato lo siguiente:

"[…]

Me comprometo a cumplir con el pago acordado los días 17 de cada mes a partir del 17 de mayo de 2022, por la cantidad de $2,000.00 mensuales.

[…] Bajo ningún concepto se regresará, devolverá o reembolsará dinero correspondiente al pago mensual una vez iniciados los servicios mensuales o que sean asignados para separar o reservar algún espacio para residente.
[…]"

6. En la misma fecha del 17 de mayo de 2022 la Querellante pagó al Querellado la cantidad de **dos mil dólares ($2,000.00)**, correspondiente a la mensualidad de 17 de mayo de 2022 al 17 de junio de 2022.

7. Al concluir los procesos de contratación y autorización, la Querellante procedió a ingresar a su esposo, el señor Benito Rodríguez, en el centro de cuido del Querellado.

8. El sábado, 21 de mayo de 2022 personal del Querellado se comunicó con la Querellante para informarle que deseaban reunirse con esta para discutir un suceso ocurrido con el señor Benito Rodríguez. En esa misma fecha la Querellante se personó al centro de cuido.

9. Una vez llegó al centro de cuido, la Querellante fue recibida por personal del Querellado y se le informó de un suceso en el que el señor Benito Rodríguez había presentado cambios en el comportamiento con su compañero de cuarto. Por lo que se le trasladó a un cuarto privado[.] Estando en dicho cuarto, en un aparente estado de ansiedad, se evacuó y "ensució" las paredes y a su persona. Además, arrojó contra la pared varios recipientes de bebidas suplementarias que se encontraban en el cuarto.

10. Cuando la Querellante llegó al centro de cuido, el señor Benito Rodríguez se encontraba evacuado y solo en el cuarto, personal del Querellado aún no había atendido la situación. A la Querellante le sorprendió este comportamiento de su esposo, toda vez que nunca lo había presentado.

11. Personal del Querellado orientó a la Querellante sobre posibles servicios individualizados para el señor Benito Rodríguez. No obstante, este suceso motiv[ó] a la Querellante determinara llevarse al señor Benito Rodríguez del centro de cuido del Querellado. La Querellante además solicitó al Querellado en ese momento la devolución de los medicamentos y pertenencias del señor Benito Rodríguez.

12. Ante la ausencia del señor Jesús Galvés Orozco, las pertenencias y medicamentos del señor Benito Rodríguez fueron entregadas a la Querellante

posteriormente por medio de uno de los hijos de la Querellante.

13. El señor Benito Rodríguez estuvo ingresado en el centro de cuido durante cinco (5) días. En este tiempo se le brindó el servicio contratado. La Querellante llamaba a diario y no surge alguna reclamación o alegación del servicio durante dichas fechas, adicional el evento del 21 de mayo de 2022.

14. Posteriormente[,] el sábado 21 de mayo de 2022, la Querellante presentó Querella ante el Departamento de la Familia. Esta Querella motiv[ó] varias investigaciones por parte de la Agencia y la Oficina Estatal del Procurador de Cuidado de Larga Duración. Como resultado de dichas investigaciones no se encontró ningún mal manejo o asunto relacionado a maltrato.

15. El 3 de junio de 2022 la Querellante presentó Querella ante este Departamento en la que solicitó la devolución de los dos mil dólares ($2,000) pagados en concepto de mensualidad de cuido al Querellado.

Finalmente, el DACo declaró Con Lugar la querella y, en consecuencia, le ordenó a Caguas Senior Living a pagar $1,666.66 a la Sra. Lizardi Del Valle en un término de quince (15) días, contados a partir de la fecha de la notificación de la resolución.

Transcurrido dicho término, el DACo recurrió ante el TPI el 24 de octubre de 2022 mediante un recurso de *Petición para Hacer Cumplir Orden* al amparo de la Ley Núm. 5 de 23 de Abril de 1973, según enmendada, conocida como *"Ley Orgánica del Departamento de Asuntos del Consumidor"*, 3 LPRA sec. 341 *et seq.* En su recurso, el DACo alegó que Caguas Senior Living había incumplido con lo ordenado en la *Resolución* de 26 de agosto de 2022, por lo que solicitó que se emitiera un dictamen ordenando su cumplimiento bajo apercibimiento de desacato.[5]

Luego de varios trámites procesales, el 23 de febrero de 2023, Caguas Senior Living presentó una *Moción de Desestimación*.[6] En síntesis, Caguas Senior Living alegó que el TPI carecía de jurisdicción para atender el recurso presentado por el DACo. Según

---

[5] Apéndice del *Certiorari*, págs. 1-2.
[6] Apéndice del *Certiorari*, págs. 16-20.

su contención, mediante la *Resolución* de 26 de agosto de 2022 el DACo revisó y dejó sin efecto una determinación emitida por el Departamento de la Familia sin tener jurisdicción para ello, por lo que dicho dictamen era nulo.

El 27 de febrero de 2023, el DACo presentó una *Oposición a Solicitud de Desestimación.*[7] En síntesis, el DACo alegó que Caguas Senior Living estaba induciendo a error al Tribunal al alegar que mediante la *Resolución* de 26 de agosto de 2022 se había revisado y dejado sin efecto una determinación del Departamento de la Familia; que se trataba de casos y reclamaciones distintas; y que de ninguna manera el DACo había interferido con la determinación del Departamento de la Familia. Según explicó, esta última se emitió a raíz de un referido de alegaciones de maltrato institucional que presentó la Sra. Lizardi Del Valle el 21 de mayo de 2022 en contra de Caguas Senior Living ante el Departamento de la Familia.

El 31 de agosto de 2023, notificada el 8 de septiembre de 2023, el TPI emitió una *Resolución* declarando No Lugar la *Moción de Desestimación* presentada por Caguas Senior Living.[8] En su dictamen, el TPI concluyó lo siguiente:

> "[...] COINCIDIMOS CON LO EXPUESTO POR LA PETICIONARIA[,] DACO[,] QUE SU QUERELLA Y RESOLUCIÓN TRATAN DE UN ASUNTO COMPLETAMENTE DISTINTO QUE EL DILUCIDADO ANTE EL DEPARTAMENTO DE LA FAMILIA [...]."

Finalmente, el TPI señaló la fecha de la vista para atender el recurso presentado por el DACo para el 16 de noviembre de 2023.

Inconforme con dicha determinación, Caguas Senior Living acudió ante nos el 10 de octubre de 2023 mediante el presente recurso de *Certiorari*, en el que señala la comisión del error siguiente:

---

[7] Apéndice del *Certiorari*, págs. 21-39.
[8] Apéndice del *Certiorari*, pág. 40.

Erró el Tribunal de Primera Instancia al asumir jurisdicción donde no tiene, ya que el DACO no la ten[í]a.

El 23 de octubre de 2023, el DACo presentó su *Oposición a Certiorari.*

Contando con el beneficio de la comparecencia de las partes, procedemos al resolver.

-II-

A.

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR,* supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León v. AIG,* supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari,* bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR,* supra, pág. 337. Dicha Regla dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones:

"cuando se recurra de una resolución u orden bajo las

Reglas 56 y 57 [de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57,] o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra.*

No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia:

"cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia." *Íd.*

Al denegar la expedición de un recurso de *certiorari* en estos últimos casos, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que "el Tribunal de Apelaciones no tiene que fundamentar su decisión." *Íd.*

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del

Reglamento del Tribunal de Apelaciones, *supra.*

**B.**

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R.10.2, es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428-429 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Dicha Regla dispone, en lo pertinente, lo siguiente:

> "Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) Dejar de exponer una reclamación que justifique la concesión de un remedio; (6) Dejar de acumular una parte indispensable."

En particular, la jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *MCS Advantage v. Fossas Blanco et al.*, 2023 TSPR 8, 211 DPR ___ (2023). Sobre el particular, se ha señalado que el Estado, a través de sus leyes, es quien único puede otorgar o privar a un tribunal de jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020), citando a *Rodríguez Rivera v. De León Otaño*, 191 DPR 700 (2014)*; Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Así pues, para privar a un tribunal de jurisdicción, es necesario que algún estatuto lo disponga expresamente o que surja de él por implicación necesaria. *Báez Rodríguez et al. v. E.L.A.*, 179 DPR 231, 241 (2010); *Mun. Arecibo v. Mun. Quebradillas*, 161 DPR 109, 114 (2004); *J. Directores v. Ramos*, 157 DPR 818, 824 (2002).

Presentes las antedichas circunstancias, la falta de jurisdicción sobre la materia acarrea las siguientes consecuencias:

(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Beltrán Cintrón et al. v. ELA et al.*, supra, págs. 101-102. Véase, además, *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018).

En consecuencia, si un tribunal determina que carece de jurisdicción sobre la materia para atender determinado asunto, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. *Allied Mgmt. Group v. Oriental Bank*, supra, pág. 386; *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268-269 (2018); *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 105 (2013). Ello, pues, es harto reiterado que la falta de jurisdicción es insubsanable. *Allied Mgmt. Group v. Oriental Bank*, supra; *JMG Investment v. ELA et al.*, 203 DPR 708, 714 (2019); *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016).

### C.

El DACo tiene como propósito primordial "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de uso y consumo." Artículo 3 de la Ley Núm. 5 de 23 de abril de 1973, *supra*.

A fin de poder cumplir con este propósito, el Secretario del DACO tiene el deber y la facultad de "[a]tender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía." Artículo 6(c) de la Ley Núm. 5 de 23 de abril de 1973, *supra.*

En aras de vindicar eficazmente los derechos de los consumidores, el DACO "posee una estructura de adjudicación administrativa con plenos y amplios poderes para adjudicar las querellas ante su consideración, y conceder los remedios pertinentes conforme a derecho." Artículo 6(d) de la Ley Núm. 5 de 23 de abril de 1973, *supra*; *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 696 (2019). Artículo 6 (d) de la Ley Núm. 5 de 23 de abril de 1973, *supra*.

En lo pertinente al caso ante nuestra consideración, sabido es que las agencias administrativas carecen del "poder coercitivo que tienen los tribunales para exigir el cumplimiento de órdenes y resoluciones". *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 655 (2013). Por ello, la Ley Núm. 5 de 23 de abril de 1973, *supra*, provee para que dichos organismos puedan acudir ante los tribunales y hacer cumplir sus resoluciones. En particular, faculta al Secretario del DACo para:

> "Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta ley y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento." Artículo 6 (i) de la Ley Núm. 5 de 23 de abril de 1973, *supra*.

A estos efectos, cualquier petición para hacer cumplir una orden del DACo, "se someterá o presentará en la Sala del Tribunal de Justicia correspondiente a la Oficina Regional del Departamento donde se haya llevado a cabo el procedimiento de querella, independientemente que la parte querellada (demandada) no resida en el área cubierta por dicha Oficina Regional." *Íd*.

**-III-**

En su recurso de *Certiorari*, Caguas Senior Living señala como único error que erró el TPI "al asumir jurisdicción donde no tiene, ya que el DACo no la ten[í]a." En síntesis, Caguas Senior Living alega que el TPI carecía de jurisdicción para atender el recurso presentado

por el DACo basado en que, mediante la *Resolución* de 26 de agosto de 2022, dicha agencia revisó y dejó sin efecto una determinación del Departamento de la Familia sin tener jurisdicción para ello, por lo que la referida resolución era nula.

En su *Oposición al Certiorari*, alega DACo que mediante la *Resolución* de 26 de agosto de 2022 no se revisó ni se dejó sin efecto la determinación del Departamento de la Familia; que se trataba de casos y reclamaciones distintas; y que de ninguna manera se había interferido con la determinación del Departamento de la Familia.

Tratándose de la denegatoria de una moción de carácter dispositivo, estamos facultados para revisar esta determinación mediante un recurso de *certiorari*, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra.* Sin embargo, la expedición de un recurso de *certiorari* sigue siendo una decisión discrecional por parte del tribunal y se basa en la evaluación de los criterios establecidos la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

Evaluado el recurso de *Certiorari* presentado por Caguas Senior Living a la luz de los criterios que guían el ejercicio de nuestra discreción para decidir si procede la expedición de estos recursos, concluimos que en el presente caso no hay motivos para ejercer nuestra función revisora en esta etapa de los procedimientos. No surgen indicios de parcialidad, perjuicio, craso abuso de discreción o error por parte del foro primario al denegar la moción de desestimación presentada por Caguas Senior Living. A todas luces la de determinación del DACo no es nula ni contraria a derecho como se alega y advino final y firme por lo cual se puede solicitar al tribunal por DACo una acción en cumplimiento de orden.

**-IV-**

Por los fundamentos expuestos, se deniega la expedición del recurso de *Certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones