per curiam:
Hoy este Tribunal está llamado a expresarse en cuanto a una controversia latente de naturaleza electoral. En esta ocasión la confianza, transparencia y pulcritud del sistema electoral de Puerto Rico es blanco de ataque a tan solo tres días de que nuestro Pueblo exprese su voluntad en las urnas.
El caso de autos coloca ante nuestra consideración el eminente interés público de salvaguardar la pureza del contenido de las urnas electorales garantizando que solo aquellos electores que posean válidamente el derecho al voto acudan a los colegios electorales. La confianza de la ciudadanía en el ejercicio electoral que se llevará a cabo el próximo martes, 6 de noviembre, está en juego.
Nos corresponde interpretar el Manual de Procedimien-tos para las Elecciones Generales, la Consulta sobre el Es-tatus Político de Puerto Rico y el Escrutinio General, apro-bado el 19 de septiembre de 2012 (Manual de Procedi-mientos para las Elecciones) para auscultar si en el colegio *203 de electores que votan añadidos a mano debe haber una lista de electores excluidos por estar inactivos (1-8). Tam-bién debemos resolver si los electores que aparecen en esas listas pueden votar en el colegio de electores que votan añadidos a mano. Luego de analizar con detenimiento las posiciones de las partes junto al derecho aplicable, contes-tamos la primera interrogante en la afirmativa y la se-gunda en la negativa.
I
Como es de conocimiento público, las elecciones genera-les en Puerto Rico tendrán lugar el próximo martes, 6 de noviembre de 2012, junto a una consulta de estatus, con-forme a las disposiciones de la Ley Núm. 283-2011, cono-cida como Ley Habilitadora del Plebiscito.
Ante la preocupación de salvaguardar la pureza de los procesos ante la Comisión Estatal de Elecciones (CEE), el peticionario Comisionado Electoral del Partido Nuevo Pro-gresista (PNP) solicitó a ese organismo que entregara las listas 1-8 a todas las unidades y colegios electorales. Las listas 1-8 corresponden a las personas no hábiles para vo-tar conforme a las disposiciones del Código Electoral, es decir, aquellos electores inactivos porque no ejercieron su derecho al voto en las elecciones generales de 2008 y no se reactivaron para votar antes del 17 de septiembre de 2012.
Atendida la petición, el 26 de octubre de 2012 la CEE la denegó mediante la Resolución CEE-RS-12-120. Funda-mentó su decisión en que la solicitud realizada por el Co-misionado del PNP “constituiría una enmienda a la Regla 35 inciso (1) del Reglamento de Elecciones Generales de 2012, que no cuenta con el consentimiento unánime de los comisionados electorales según lo requiere el Artículo 3.004(c) del Código Electoral”. Véase Resolución CEE-RS-12-120, pág. 4.
No conteste con esta determinación, el 27 de octubre de *204 2012 el Comisionado Electoral del PNP presentó una mo-ción de reconsideración ante la CEE. Esta fue denegada mediante Resolución el 29 de octubre de 2012.
Así las cosas, el 30 de octubre de 2012 la parte peticio-naria presentó un escrito de revisión de la Resolución de la CEE ante el Tribunal de Primera Instancia, Sala de San Juan. Ese mismo día, la Juez Superior Hon. Georgina Can-dal Seguróla dictó una orden mediante la cual señaló vista para el jueves, 1 de noviembre de 2012.
Ante la inminencia de la celebración del evento electoral, el peticionario presentó un auto de certificación intra-jurisdiccional ante este Tribunal el 31 de octubre de 2012. Examinado el recurso, denegamos la expedición del auto. Entendimos que nuestra intervención era innecesaria en esa etapa de los procedimientos, ya que el foro primario podía resolver el asunto con premura.
A pesar de la deferencia que le brindamos a ese foro, este no resolvió con la celeridad que este asunto amerita. Con ello colocó en riesgo la posibilidad de que el sistema judicial concediera un remedio oportuno. Sentó así las bases para que, por la ausencia de una decisión judicial, la controversia se tornara académica. Nos preocupa la acti-tud asumida por la honorable Candal Seguróla, pues no es la primera vez que tenemos que intervenir para atender con prontitud una controversia electoral que ella no resol-vió a tiempo. Véase PNP v. CEE y PPD I, 185 D.P.R. 283 (2012). Ante la urgencia del asunto planteado, no podemos cruzarnos de brazos y hacernos de la vista larga.
Inconforme con la inercia del Tribunal de Primera Ins-tancia, el peticionario acude otra vez ante nos y solicita que, en aras de garantizar la pureza y eficiencia del pro-ceso eleccionario, reconsideremos y resolvamos a favor de permitir que las listas (1-8) sean suministradas a todos los colegios y unidades electorales para evitar que electores inactivos según las disposiciones de nuestro Código Electo *205 ral se presenten a los colegios de electores añadidos a mano y emitan su voto ilegalmente.
El Art. 4.001 del Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78-2011 (16 L.P.R.A. sec. 4031), dis-pone que todo “asunto o controversia que surja dentro de los cinco (5) días previos a la celebración de una elección deberá notificarse en el mismo día de su presentación y resolverse no más tarde del día siguiente de su presentación”. Ante el deber plasmado en ese precepto y la falta de actuación oportuna del foro primario, nos vimos obligados a reconsiderar y expedir el auto de certificación el 2 de noviembre de 2012 a las 3:00 p. m. Asimismo, orde-namos a todas las partes que presentaran sus alegatos no más tarde del 2 de noviembre de 2012 a las 7:00 p. m.
La CEE y el Comisionado Electoral del Partido Popular Democrático (PPD) cumplieron con nuestra orden y pre-sentaron sus alegatos.(1)
II
 El ordenamiento jurídico de Puerto Rico concede jurisdicción a este Tribunal para intervenir en casos que estén pendientes ante los tribunales de jerarquía inferior mediante un auto de certificación intrajurisdiccional. Art. 3.002 de la Ley Núm. 201-2003, Ley de la Judicatura de 2003 (4 L.P.R.A. sec. 24s). El Art. 3.002 de la Ley de la Judicatura de 2003, id., establece que este mecanismo po-drá ser expedido por el Tribunal Supremo de manera dis- *206 crecional, a solicitud de parte o motu proprio, cuando “se planteen cuestiones noveles de derecho, o se planteen cues-tiones de alto interés público que incluyan cualquier cues-tión constitucional sustancial” al amparo de la Constitu-ción de Puerto Rico o la Constitución de Estados Unidos. íd.
Al amparo de esa disposición estatutaria, este Tribunal regularmente ha expedido autos de certificación para resolver casos que por su propia naturaleza requieren una solución urgente. P.I.P. v. E.L.A. et al., 186 D.P.R. 1 (2012); U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 272-273 (2010). Con mayor frecuencia, se ha utilizado el auto de certificación intrajurisdiccional para adjudicar casos que involucran controversias de derecho electoral. Véanse: P.I.P. v. E.L.A. et al., supra; McClintock v. Rivera Schatz, 171 D.P.R. 584 (2007); Suárez v. C.E.E. I, 163 D.P.R. 347 (2004).
La controversia expuesta en este caso cumple clara-mente con todos los requisitos estatutarios y jurispruden-ciales para que este Tribunal expida un auto de certifica-ción intrajurisdiccional. De entrada, esta controversia surge en el contexto particular de que Puerto Rico está a solo tres días de celebrar las Elecciones Generales de 2012. Como tribunal de última instancia, estamos llamados a ad-judicar utilizando como norte los diversos intereses públi-cos de eminente jerarquía que permean todo este caso.
Por otro lado, nuestro ordenamiento constitucional ga-rantiza que la voluntad política del Pueblo se ejercerá a través del voto libre, directo y secreto. Art. II, Sec. 2, Const. P.R., Tomo 1, ed. 2008, pág. 278. Además, es incuestionable el interés público de garantizar la pulcritud del contenido de las urnas electorales, las cuales son custodias de la vo-luntad democrática de los ciudadanos de Puerto Rico. Así, es necesario que en este caso el Tribunal de más alta jerar-quía se exprese de forma expedita y concienzuda en cuanto a una controversia que en su fondo trata sobre la pureza *207 del proceso electoral del próximo martes. Todo ello es en aras de garantizar que solo aquellas personas que posean válidamente su derecho al voto así lo hagan. La responsa-bilidad jurídica final de este Tribunal en cuanto a la con-troversia de epígrafe es ineludible “[p]ara traer alguna tranquilidad al Pueblo de Puerto Rico”. Suárez v. C.E.E. I, supra, pág. 362.
I — 1 1 — 1
Como primer paso en el análisis, este Tribunal debe guardar la usual deferencia a la CEE en aquellos casos en que la determinación dependa principal o exclusivamente de una cuestión de derecho electoral especializado. Granados v. Rodríguez Estrada I, 124 D.P.R. 1, 20 (1989). Sobre el particular, hemos reiterado que las decisiones de los organismos administrativos merecen deferencia judicial, ya que son quienes cuentan con el conocimiento especializado y la experiencia en los asuntos que se les encomiendan. Com. Seg. v. Real Legacy Assurance, 179 D.P.R. 692, 716-717 (2010); Vélez v. A.R.Pe., 167 D.P.R. 684, 693 (2006); Torres v. Junta Ingenieros, 161 D.P.R. 696, 708 (2004); T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999).
Además, el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, establece que cuando “la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. Cónsono con lo anterior, debemos recordar que “como cuestión de umbral es menester remitirnos al texto de la ley”. Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231, 245 (2010). Ello se debe a que la manifestación clara del legislador es la expresión por excelencia de toda intención legislativa. Íd.; S.L.G. Rodríguez-Rivera v. Bahía Park, 180 D.P.R. 340, 355 (2010); Rullán Rivera v. A.E.E., 179 D.P.R. 433, 444 (2010); Claro *208 TV y Junta Regl. Tel. v. OneLink, 179 D.P.R. 177, 209-210 (2010).
El Art. 6.012 del Código Electoral, 16 L.P.R.A. sec. 4072, dispone que la CEE podrá excluir del Registro a un elector por las causales dispuestas en la ley. Entre ellas, se encuentra que el elector fue “inactivado” del Registro General de Electores porque no votó en las elecciones generales previas. íd. Según ese precepto legal, esa inactivación del elector constituye “[u]na exclusión [que] no implicará la eliminación de los datos del elector del Registro General de Electores”. Eso obedece a que ese elector puede reactivarse antes de la fecha límite dispuesta para ello. En particular, el Art. 6.015 del Código Electoral, 16 L.P.R.A. sec. 4075, indica que no se autoriza la inscripción de ningún elector cincuenta días previos a la elección.
Por otro lado, la Regla 18 del Reglamento para las Elecciones Generales y el Escrutinio General de 2012, aprobado el 10 de mayo de 2012, ordena a la Oficina de Sistemas de Información y Procesamiento Electrónico de la CEE (OSIPE) producir la lista de electores excluidos para su uso en las subjuntas de unidad y colegios de votación. Asimismo, la Regla 35 de ese Reglamento, íd., establece que en cada centro de votación habrá un colegio para que voten los electores que reclamen su derecho al voto pero no aparecen en la lista de electores activos ni en la de exclusiones. Allí solo votarán los electores que no aparecen en las listas electorales “por errores administrativos de la Comisión ...”. Íd. Véase, además, Art. 9.015 del Código Electoral, 16 L.P.R.A. sec. 4155.
Por eso, la Regla 14.6(d) del Manual de Procedimientos para las Elecciones Generales dispone taxativamente, como señaló el Presidente de la CEE en su resolución, que un elector “excluido NO PODRÁ VOTAR a menos que haga entrega de algún documento oficial de la CEE que evidencie que puede tener derecho a votar”. (Enfasis *209 en el original). Incluso, votar añadido a mano sin derecho a hacerlo constituye delito grave de cuarto grado que conlleva como penalidad un término fijo de tres años de cárcel. Véanse: Art. 12.023 del Código Electoral, 16 L.P.R.A. sec. 4253; Art. 307 del Código Penal de 2012, Ley Núm. 146-2012.
Además, se debe recordar que toda persona que a sa-biendas viole cualquier disposición del Código Electoral será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal. Art. 12.005 del Código Electoral, 16 L.P.R.A. sec. 4235. Igual pena conlleva violar intencionalmente cualquier regla o re-glamento aprobado y promulgado por la CEE. Art. 12.007 del Código Electoral, 16 L.P.R.A. sec. 4237.
Como se aprecia, la Asamblea Legislativa tipificó como delito varias conductas dirigidas a cometer fraude electoral. Con la tipificación de esos delitos, se deduce una clara política pública por parte del legislador de combatir el fraude electoral imponiendo responsabilidad penal.
IV
En su resolución, la CEE indicó que la petición del Co-misionado Electoral del PNP para que en cada colegio se distribuya una lista 1-8 constituía una enmienda a la Regla 35 del Reglamento para las Elecciones Generales y el Es-crutinio General de 2012. Luego de auscultar el ordena-miento jurídico pertinente, resulta forzoso concluir que la interpretación de la CEE es errónea. Por el contrario, el reglamento ordena la distribución de las listas de electores excluidos en los centros de votación que se habilitarán el próximo 6 de noviembre de 2012. Por definición, eso in-cluye los electores inactivos que aparecen en las listas 1-8. Estos también son electores excluidos del registro electoral. Al respecto, la Regla 18 del Reglamento antes *210 citado, id., ordena que la OSIPE reproduzca las listas de electores excluidos para uso de las subjuntas de unidad y colegios de votación. Cónsono con lo anterior, el Art. 6.012 del Código Electoral, supra, ordena a la CEE excluir del Registro Electoral a los electores que no votaron en las pasadas elecciones. Esos electores se encuentran agrupa-dos en las listas 1-8.
Según se deduce de la Sec. 14.6(d) del Manual de Pro-cedimientos para las Elecciones, ningún elector que apa-rezca en la lista de excluidos puede votar en un colegio de electores añadidos a mano sin presentar un documento ofi-cial expedido por la propia CEE que evidencie que tiene derecho a votar. No es suficiente que un elector excluido o inactivado se presente a votar sin evidencia oficial de que tiene derecho a ello.
Así pues, resulta espinoso concebir cómo se puede cum-plir con el mandato legislativo que recoge el Art. 6.012 del Código Electoral, id., sin que los funcionarios de los centros de votación tengan las listas 1-8 a su disposición. Sin lugar a dudas, esas listas son herramientas de trabajo necesa-rias para que estos funcionarios puedan ejercer sus debe-res ministeriales delegados por ley. Véanse, en general, las Secs. 7.1 a 16.2 del Manual de Procedimientos para las Elecciones.
Las partes recurridas señalan que en el pasado nunca se han incluido los electores inactivos en la lista de electo-res excluidos. Si bien la interpretación de la agencia encar-gada de poner en vigor su reglamento merece deferencia, eso no convalida una interpretación que se aparte del texto de la ley y del propio reglamento. Los electores inactivos son una categoría de electores excluidos de las listas de votación. No estamos cambiando las reglas para estas elecciones. Lo que sucede es que el uso y costumbre no justifica apartarse del texto del reglamento.
Debemos recordar que los colegios de electores *211 añadidos a mano existen exclusivamente para garantizar el derecho al voto de electores activos e inscritos válida-mente pero que, por errores administrativos de la CEE, su información registral no aparece en las listas de electores o está con errores. Véanse: Art. 9.015 del Código Electoral, supra; Regla 35 del Reglamento para las Elecciones Generales, supra. Por ende, resulta claro que estos colegios de electores añadidos a mano no se diseñaron con el propósito ilegal y delictivo de permitir el voto de electores excluidos o inactivados. Es decir, el colegio de añadidos a mano no existe para que vote quien no tiene derecho a hacerlo.
V
Por último, es menester aclarar que la controversia que atendemos hoy es muy distinta a la que discutió el Tribunal Federal de Apelaciones para el Primer Circuito en Colón Marrero et al. v. Conty Pérez et al., Op. de 2 de noviem-bre de 2012, Civil No. 12-2145. Allí se resolvió que la National Vote Registration Act (NVRA), 42 U.S.C.A. sec. 1973gg-1(4), por sus términos no aplica a Puerto Rico. Colón Marrero et al. v. Conty Pérez et al., supra, pág. 6. El foro federal sostuvo que la parte allí demandante sí pre-sentó un caso con mérito en cuanto a la Help America Vote Act of 2002 (HAVA), 42 U.S.C.A. sec. 15541, en lo que res-pecta a la candidatura de comisionado residente. Colón Marrero et al. v. Conty Pérez et al., supra, pág. 8. Sin embargo, aclaró que
... es una pregunta abierta y difícil —que la demandante no discutió— si la HAVA proveería un fundamento para que un tribunal estatal ordene la reinstalación de votantes en las elecciones del Estado Libre Asociado. En la medida en que el lenguaje de nuestra orden de 11 de octubre sugirió que nues-tra determinación también se extendía al derecho de la de-mandante a votar en las elecciones locales de Puerto Rico, ese *212 lenguaje no reflejó ni refleja la visión de la mayoría [del tribunal]. (Traducción nuestra). Íd., pág. 9.(2)
En otras palabras, el tribunal federal rechazó el uso de la HAVA para obligar a la CEE a reactivar en esta elección de 2012 a los electores excluidos del registro electoral por-que no votaron en las elecciones generales de 2008. De esa forma, es errada la postura del Comisionado del PPD que sostiene lo contrario. Como muy bien señala la CEE, con la “determinación del Tribunal de Apelaciones para el Primer Circuito, es evidente que en este momento nadie cuestiona que los electores que no votaron en las Elecciones Genera-les del 2008... no pueden votar en las Elecciones Generales del 2012”. Alegato de la CEE, pág. 3. De hecho, el Comisio-nado del PPD nos informa que el Tribunal Federal de Ape-laciones para el Primer Circuito emitió una orden ayer, 2 de noviembre de 2012, en la que denegó una moción de emergencia que presentó la allí demandante para que se le permitiera votar el próximo martes.
Como se aprecia, el Tribunal Federal de Apelaciones para el Primer Circuito atendió una controversia pura de derecho federal. En específico, se le planteó la aplicación de las dos leyes federales discutidas a las elecciones de este territorio. Muy distinta es la encomienda que atendemos hoy. Nuestra labor en este caso es interpretar nuestra ley electoral estatal y los reglamentos aplicables para resolver la controversia que nos ocupa.
VI
Por los fundamentos antes expuestos, se declara “con lugar” la moción de reconsideración que presentó la parte *213 peticionaria. En consecuencia, se ordena al Presidente de la Comisión Estatal de Elecciones, Hon. Héctor Conty Pérez, que “inmediatamente” imparta instrucciones para que se proceda con la impresión de las listas 1-8. Además, se or-dena que esas listas sean distribuidas a todas las subjuntas de las unidades y los centros de votación que estarán acti-vos el 6 de noviembre de 2012.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unieron el Juez Presi-dente Señor Hernández Denton y la Jueza Asociada Se-ñora Fiol Matta.
— O —

 De igual forma, la Comisionada del Partido del Pueblo Trabajador solicitó la desestimación del recurso por falta de jurisdicción. Cimentó su petitorio en que el escrito de reconsideración se le notificó directamente a ella y no a su abogada, Leda. Brenda Berrios Morales. Véase Regla 67.2 de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V). Es incorrecta la contención de la Comisionada Electoral del PPT. La licenciada Berrios Morales nunca compareció por escrito como abogada de récord. De hecho, la moción de desestimación es su primera comparecencia en este caso. Por consiguiente, la moción de reconsideración se notificó a la Comisionada Electoral directamente, como establecen las reglas.

 El texto original en inglés dispone: “[I]t is an open and difficult question —one not addressed by plaintiff— whether HAVA would provide a basis for a federal court ordering the reinstatement of voters in Commonwealth elections. To the extent that the language of the October 11 order suggested that our determination also extended to plaintiff’s right to vote in Puerto Rico’s local elections, that language did not and does notreflect the view of the majority”.