ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| TOWER CABINETS, INC.<br><br>Parte Apelante<br><br>v.<br><br>CASA MODERNA, INC.<br><br>Parte Apelada | KLAN202500317 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm. MZ2024CV02151<br><br>Sobre: Violación de Derecho Marcario, *Injunction* Preliminar y Permanente; Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Compareció ante este Tribunal la parte apelante, Towers Cabinets, Inc. (en adelante, "Towers" o "Apelante"), mediante recurso de apelación presentado el 14 de abril de 2025. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 15 de enero de 2025, notificada y archivada en autos al día siguiente. Dicho dictamen fue objeto de una "**Moción de Reconsideración y en Oposición a Comparecencia Especial en Solicitud de Desestimación**" (en adelante, "Moción de Reconsideración") interpuesta por el Apelante, la cual fue declarada "No Ha Lugar" el 6 de marzo de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

## I.

El caso de epígrafe tuvo su inicio el 11 de diciembre de 2024, con la presentación de una "**Demanda Jurada**" (en adelante, "Demanda") por parte de Towers en contra de Casa Moderna, Inc. (en adelante, "Casa Moderna" o "Apelada") sobre violación de derecho marcario, *injunction*

preliminar y permanente y daños y perjuicios. Mediante la misma, alegó que comenzó sus operaciones de venta de muebles y artículos de ferretería bajo el nombre "Vanelys Kitchen". Relató que, en junio de 2021, verificó que el nombre comercial y la marca "Casa Moderna" estuviera disponible en el sistema en línea de Registro de Marcas y Nombres Comerciales de Puerto Rico y realizó múltiples búsquedas en plataformas de internet y redes sociales tales como Google, Facebook e Instagram para conocer si dicho nombre ya estaba siendo utilizado. Sostuvo que el 26 de agosto de 2021 comenzó a utilizar de manera ininterrumpida el nombre comercial y la marca "Casa Moderna", así como sus logotipos y variaciones en relación con la venta de muebles y artículos de ferretería. Indicó que, desde dicha fecha, ha realizado inversiones significativas para hacer crecer su empresa y ha llevado a cabo extensos esfuerzos promocionales utilizando las mencionadas marcas, lo que alegó le ha generado un alto grado de reconocimiento y plusvalía tanto a las marcas como a los negocios que gestiona.

Asimismo, expresó que, gracias a las ventas, campañas publicitarias y actividades promocionales realizadas en Puerto Rico, el público consumidor ha llegado a identificar y asociar las marcas con los servicios proporcionados por ella. Expresó que, debido al uso continuo e ininterrumpido de las mencionadas marcas, se ha convertido en su propietaria y tiene derecho exclusivo sobre su uso. Manifestó que, a diferencia de la Apelada, ha gestionado de manera activa la protección de las marcas y es la titular exclusiva del nombre comercial "Casa Moderna" ante el Registro de Marcas y Nombres Comerciales de Puerto Rico. Acentuó que ha presentado varias solicitudes de registro tanto para el nombre como para el logotipo de "Casa Moderna" en el Registro de Marcas y Nombres Comerciales, en relación con tiendas de mejoras para el hogar dentro de la clase internacional. Adujo que, no obstante lo anterior, la Apelada ha adoptado un nombre idéntico o confusamente similar a sus marcas para identificar servicios de remodelación de hogares, tanto

residenciales como comerciales. Señaló que el uso del nombre por parte de Casa Moderna ha causado confusión en los consumidores, quienes erróneamente han asociado o creído que existe alguna relación entre su negocio y el de la Apelada.

Del mismo modo, expresó que varios consumidores la han contactado erróneamente, en relación con la supuesta apertura de una nueva ubicación en el municipio de Mayagüez, donde la Apelada tiene la intención de abrir un establecimiento. Explicó que, por tal razón, el 20 de agosto de 2024 le envió a la Apelada una carta solicitando el cese y desista de cualquier uso de su marca, logo e imagen comercial que pudiera causar confusión en la mente de los consumidores. Mencionó que, el 27 de septiembre de 2024, la Apelada envió una copia de una solicitud de cancelación de nombre comercial presentada ante el Registro de Marcas y Nombres Comerciales de Puerto Rico. Alegó que lo anterior sugiere que Casa Moderna decidió presentar intencionalmente y de mala fe dicha solicitud de cancelación en lugar de buscar una solución justa y equitativa. Añadió que esa acción tiene como objetivo beneficiarse de la plusvalía de sus marcas, apropiarse de ellas y obligarla a incurrir en gastos legales innecesarios.

En vista de lo anterior, le solicitó al Tribunal que: (1) expida una orden provisional *ex parte* dirigida a la Apelante, sus accionistas, directores, empleados, agentes, representantes, afiliadas y subsidiarias, requiriendo que cese y desista inmediatamente del uso de su marca, nombre comercial y su nombre corporativo "Casa Moderna", así como cualquier otro nombre que sea confusamente similar, (2) dicte sentencia declarando "Ha Lugar" la "**Demanda**", estableciendo que la Apelada ha violado la Ley de Nombres Comerciales, *infra*, y la Ley de Marcas de Puerto Rico, *infra*, y (3) ordene el pago de la indemnización de los daños sufridos, las costas, los gastos y honorarios de abogado incurridos.

Así las cosas, y tras múltiples trámites procesales incluyendo la celebración de una vista de *injunction* preliminar, el 14 de enero de 2025

Casa Moderna presentó una "**Comparecencia Especial en Solicitud de Desestimación**" (en adelante, "Solicitud de Desestimación") en la que alegó que desde el año 2019 utiliza el nombre comercial y la marca "Casa Moderna" para ofrecer su bienes y servicios en el comercio en Puerto Rico. Igualmente, mencionó que el 24 de septiembre de 2024 Towers le envió a la Apelante una "**Carta de Cese y Desista de Uso de Marca y Nombre Comercial**". Manifestó que, como consecuencia de lo anterior, el 27 de septiembre de 2024 presentó ante el Departamento de Estado una solicitud de cancelación de nombre comercial contra el Apelante. Señaló que el 11 de diciembre de 2024, estando pendiente la referida solicitud de cancelación, Towers presentó una "**Demanda**" en su contra. Sostuvo que la Apelante se había sometido al proceso administrativo al presentar oposición a dicha solicitud. A tenor con lo anterior, le peticionó al TPI que desestimara las reclamaciones formuladas en su contra por falta de jurisdicción por existir un procedimiento administrativo de cancelación de nombre comercial pendiente ante la Oficina de Registro de Marca y Nombres Comerciales del Departamento de Estado.

Finalmente, el 15 de enero de 2025, el TPI emitió una *Sentencia* en la que desestimó la causa de acción presentada en contra de Casa Moderna por existir una controversia pendiente ante la Oficina de Registro de Marca y Nombres Comerciales del Departamento de Estado respecto a quién le pertenece el derecho de la marca objeto del presente caso. Específicamente, el foro apelado determinó que existe jurisdicción concurrente para atender la controversia, pero que habiéndose presentado inicialmente el pleito en la mencionada agencia administrativa, el mismo debía ser resuelto ante dicho foro. Insatisfecho con dicha determinación, el 28 de enero de 2025, el Apelante presentó la *Moción de Reconsideración*, la cual fue declarada "No Ha Lugar" el 6 de marzo de 2025. Aún inconforme, Towers presentó el recurso que nos ocupa, mediante el cual le imputó al TPI la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR**: Erró el Tribunal de Primera Instancia al desestimar la demanda por alegada falta

de jurisdicción y por entender que era necesario agotar remedios administrativos, cuando el Artículo 26 de la Ley de Marcas establece de manera clara e inequívoca que es el tribunal quien posee jurisdicción exclusiva para resolver las reclamaciones por infracción de marcas.

**SEGUNDO SEÑALAMIENTO DE ERROR**: Erró el Tribunal de Primera Instancia al denegar la solicitud de orden *ex parte* provisional, contraviniendo el mecanismo estatutario establecido en el Artículo 30 de la Ley de Marcas, lo que dejó a la parte apelante sin el recurso provisional necesario para evitar que la Parte Apelada continúe causándole un daño irreparable.

**II.**

**A.**

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. Cobra Acquisitions, LLC v. Municipio de Yabucoa y otros, 210 DPR 384, 394 (2022). Ante ello, los tribunales tienen el deber de, primeramente, analizar en todo caso si poseen jurisdicción para atender las controversias presentadas ante ellos, puesto que estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. Shell Chemical v. Srio. Hacienda, 187 DPR 109, 122-123 (2012). Ello responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. García v. Hormigonera Mayagüezana, 172 DPR 1, 7 (2007). La falta de jurisdicción sobre la materia conlleva las siguientes consecuencias inexorablemente fatales: (1) esta falta de jurisdicción no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal, ni el tribunal puede abrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta); (4) los tribunales tiene el ineludible deber de auscultar su propia jurisdicción; (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso; (6) el planteamiento del foro de donde procede el recurso; y (6) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento, por cualesquiera de

las partes o por el tribunal motu proprio. <u>Vázquez v. A.R.P.E.</u>, 128 DPR 513, 537 (1991).

Como es sabido, los tribunales de Puerto Rico son de jurisdicción general, por lo que pueden entender en cualquier asunto, salvo que se les prive de jurisdicción en una materia particular. <u>Clases A, B y C v. PRTC</u>, 183 DPR 666, 686 (2011); <u>CBS Outdoor v. Billboard One, Inc. *et al*.</u>, 179 DPR 391, 403 (2010). A esos efectos, la doctrina de jurisdicción primaria, también conocida como la doctrina de prelación de jurisdicción, surgió de forma jurisprudencial y, en esencia, procura establecer quién posee la facultad inicial de atender una controversia, si un foro judicial o un ente administrativo. D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da Ed., Colombia, Ed. Forum, 2001, pág. 433. La aplicación de esta doctrina presupone una jurisdicción concurrente o simultánea entre el organismo administrativo y el foro judicial. <u>Báez Rodríguez *et al.* v. ELA</u>, 179 DPR 231, 239 (2010). Es decir, la doctrina de la verdadera jurisdicción primaria, como también se le conoce, dilata o suspende la intervención judicial hasta tanto el asunto se dilucide en un foro administrativo, a pesar de que un tribunal tiene jurisdicción para adjudicarlo en primera instancia. <u>CBS Outdoor v. Billboard One, Inc. *et al*.</u>, *supra*, pág. 405. Se trata, pues, de atender una cuestión de prioridad de jurisdicción para promover la armonía entre los tribunales y las agencias administrativas. <u>Colón Rivera *et al.* v. ELA</u>, 189 DPR 1033, 1057 (2013).

Para examinar si la doctrina de jurisdicción primaria es aplicable a determinada situación de hechos, es esencial tomar en cuenta lo dispuesto por el estatuto habilitador del organismo administrativo o alguna ley especial. Le corresponde al tribunal emprender la tarea de examinar los alcances de la ley habilitadora de la agencia y determinar si es "imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia". <u>Consejo Titulares v. Gómez Estremera *et al*.</u>, 184 DPR 407, 430 (2012). Esta doctrina no constituye una camisa de fuerza y, por tanto, no aplica "cuando '[l]a naturaleza de la causa de acción

presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo, es decir, cuando la cuestión que se plantea sea puramente judicial'". Íd., págs. 430-431.

**Es decir, la regla general para la aplicación de esta doctrina es que el tribunal retiene su jurisdicción si se trata de una cuestión de estricto derecho, mientras que cede su jurisdicción al foro administrativo en los casos en los que el peritaje de la agencia resulte indispensable para resolver la controversia**. Íd. Ahora bien, en el supuesto de que un mandato legislativo exprese que la agencia tiene facultad única para atender el asunto, estamos ante una situación de jurisdicción exclusiva, por lo cual, no es de aplicación la doctrina de jurisdicción primaria. Aguadilla Paint Center v. Esso, 183 DPR 901, 932 (2011).

Por tanto, cuando la ley habilitadora de una agencia o una ley especial establece que ésta tiene jurisdicción sobre un asunto, nos encontramos ante una situación a la cual aplica la doctrina de jurisdicción exclusiva y no la de jurisdicción primaria. Ante ello, la controversia no puede ser atendida primeramente por un tribunal, toda vez que la ley expresamente le confiere jurisdicción exclusiva a la agencia para atender el asunto en primera instancia. Aunque la doctrina de jurisdicción primaria y la de jurisdicción exclusiva guardan relación entre sí, se distinguen en cuanto a su alcance y naturaleza. Íd., pág. 932. "[L]a jurisdicción exclusiva se trata de situaciones en que no aplica la doctrina de jurisdicción primaria concurrente porque la propia ley aclara que esta última no existe". Íd. En tales casos estamos frente a un mandato legislativo.

Por consiguiente, cuando por mandato de ley la Asamblea Legislativa le confiere jurisdicción exclusiva sobre un asunto particular a un organismo administrativo, queda vedada toda autoridad judicial para dilucidar el caso en primera instancia. Clases A, B y C v. PRTC, *supra*, pág. 685. Consecuentemente, es imprescindible examinar la ley habilitadora de

la agencia y otras disposiciones legales aplicables a la materia de la controversia. Báez Rodríguez *et al. v.* ELA, *supra*, págs. 240-241. Por el contrario, si no se desprende de la ley habilitadora o de otro estatuto aplicable la jurisdicción exclusiva del organismo administrativo, existe entonces concurrencia de jurisdicción entre los tribunales y la agencia, y el tribunal deberá razonar si procede la aplicación de la doctrina de jurisdicción primaria.

**B.**

En nuestro ordenamiento jurídico, la doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que se circunscribe a que los tribunales, discrecionalmente, se abstengan de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal, que la determinación administrativa refleje la postura final de la agencia. Colón Rivera *et al.* v. ELA, 189 DPR 1033, 1057 (2013). **De ordinario, su aplicación se realiza en aquellos casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible**. Procuradora Paciente v. MCS, 163 DPR 21, 35 (2004). La misma se invoca para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o **era parte de éste** y que luego recurrió al foro judicial, aunque aún tenía remedios administrativos disponibles. Mun. de Caguas v. AT&T, 154 DPR 401, 408 (2001).

La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional que impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia. Guzmán y otros v. ELA, 156 DPR 693, 714 (2002). Esto es así, pues la determinación administrativa es la que reflejará la postura final de la agencia. De ahí que sea de particular importancia diferenciar los propósitos que persiguen las doctrinas

de jurisdicción primaria y la de agotamiento de remedios administrativos.

Sobre el particular, el Tribunal Supremo expresó lo siguiente:

> La doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administrativos antes de acudirse a los tribunales, aunque ambas son hermanas y persiguen el mismo fin: poner orden en la administración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. **La doctrina que requiere que se agoten los procedimientos administrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria determina qué organismo debe hacer la determinación inicial del asunto**. E.L.A. v. 12,974.78 metros cuadrados, 90 DPR 506, 513 (1964) (énfasis suplido).

De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. AAA v. UIA, 200 DPR 903, 914 (2018). Por tanto, la doctrina de agotamiento de remedios administrativos no puede ser preterida, salvo que se configure alguna de las limitadas excepciones, a saber:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673 (énfasis suplido).

A luz de lo anterior, se ha establecido que "la parte que pretende acudir al foro judicial [debe] probar, **mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos**". Oficina Paciente v. MCS, 163 DPR 21, 36 (2004) (énfasis suplido). Esto, puesto que lo que pudiera resolver la agencia administrativa con relación a tales planteamientos constitucionales también estaría sujeto a ser revisado

en su momento por el Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655.

## C.

La Ley Núm. 75-1992, mejor conocida como la "Ley de Nombres Comerciales del Estado Libre Asociado de Puerto Rico" (en adelante, "Ley de Nombres Comerciales), fue promulgada con el fin ulterior de regular la protección de los nombres comerciales en Puerto Rico y permitir el registro voluntario a toda persona natural o jurídica de su nombre comercial, obteniendo así el derecho exclusivo a su uso. *Véase*, Exposición de Motivos de la Ley Núm. 75-1992. Dicha pieza legislativa define nombre comercial como aquel "signo o denominación que sirve para identificar a una persona en el ejercicio de su actividad empresarial y que distinguen su actividad de otras actividades idénticas o similares". 10 LPRA sec. 225.

En línea con lo anterior, el Artículo 4 de este estatuto establece que el Registro del Nombre Comercial en el Departamento de Estado es potestativo y le confiere a su titular el derecho exclusivo al uso en el tráfico económico en Puerto Rico. 10 LPRA sec. 225b. **No obstante, dispone que el usuario anterior de un nombre comercial podrá reclamar al Secretario de Estado la cancelación de un nombre comercial registrado que pueda causar confusión con el suyo, siempre que ejercite la reclamación antes de que transcurran cinco (5) años desde el registro del nombre comercial impugnado**. Íd. De igual manera, la Ley de Nombres Comerciales, *supra*, prohíbe expresamente que se registre un nombre comercial que sea similar o idéntico a una marca o nombre comercial que ya esté inscrito o que se haya solicitado su registro, que pueda ocasionar confusión en la mente del público 10 LPRA sec. 225c. Además, **su Artículo 6 establece que la Ley Núm. 169-2009, según enmendada, mejor conocida como la "Ley de Marcas del Gobierno de Puerto Rico" (en adelante, la "Ley de Marcas"), así como sus reglamentos, son de aplicación al registro de nombres comerciales,**

**siempre y cuando no sean incompatibles con el mismo**. 10 LPRA sec. 225d.

En consonancia con lo anterior, el Reglamento Núm. 9584 de 30 agosto de 2024, conocido como "**Reglamento de Procedimientos del Registro de Nombres Comerciales del Departamento de Estado del Gobierno de Puerto Rico**" (en adelante, "Reglamento Núm. 9584"), fue promulgado en virtud de la Ley de Nombres Comerciales, *supra*, con el objetivo de uniformar las reglas y prácticas procesales del Registro de Nombres Comerciales. Dicho Reglamento define nombre comercial como la denominación que sirve para identificar a una persona en el ejercicio de su actividad empresarial y **describe a un dueño de nombre comercial como aquella persona que tiene y puede evidenciar mejor derecho sobre el nombre comercial**. *Véase*, Regla 5 del Reglamento Núm. 9584. Respecto a las disputas que puedan surgir en relación con el derecho de propiedad de un determinado nombre comercial, la Regla 25 del referido Reglamento, al igual que la Ley de Nombres Comerciales, *supra*, dispone que cualquier persona que se crea perjudicada por el registro concedido de un nombre comercial puede solicitarle al Secretario de Estado que cancele tal Registro. Véase, Regla 25 del Reglamento Núm. 9584.

Por su parte, la Ley de Marcas, *supra*, regula lo concerniente a la protección de marcas en Puerto Rico, incluyendo nombres personales y designaciones geográficas. Dicho estatuto pretende incentivar industrias relacionadas a marcas, mercadeo y *branding*, y conferirles protección a las industrias multinacionales establecidas en Puerto Rico. *Véase*, Exposición de Motivos de la Ley de Marcas. Igualmente, busca fomentar la expansión comercial de pequeñas y medianas empresas. Íd.

En consonancia con ello, **el Artículo 3 de la antedicha pieza legislativa establece que el derecho a una marca se obtiene a través de su uso en el comercio o por el registro de ésta basado en la intención *bona fide* de usar la marca en el comercio**. 10 LPRA sec. 223a. Asimismo, nuestro máximo foro judicial ha reiterado que en nuestra

jurisdicción el derecho sobre una marca se adquiere por medio de su registro en el Departamento de Estado, cimentado en la intención real de utilizar la marca en el futuro y por su uso en comercio. SLG Bedrosian-Correjer v. Nestlé et al., 205 DPR 1117, 1131 (2020). **Así pues, ha expresado el referido foro, que el registro de una marca sucumbe o cede ante la reclamación oportuna de quien tiene mejor derecho sobre la marca por haberla usado con anterioridad, aun cuando éste no la haya registrado**. Federation Des Ind. v. Ebel, 172 DPR 615, 624 (2007).

Por otro lado, el Artículo 20 de la Ley de Marcas, *supra*, al igual que la Ley de Nombres Comerciales y su respectivo Reglamento, dispone que cualquier persona que se vea perjudicada por el registro de una marca, incluyendo aquel perjuicio causado por la disminución del carácter distintivo de la marca en cuestión, puede solicitarle al Secretario de Estado la cancelación de dicho registro. 10 LPRA 223q.  Por último, el Artículo 26 de la mencionada ley permite que una persona presente una demanda contra otra que se encuentre imitando o utilizando una marca igual o similar a una marca de su pertenencia. 10 LPRA sec. 223w. En dicho caso, el tribunal expedirá una orden provisional *ex parte* dirigida a la parte demandada exigiéndole que paralice, cese o desista el uso de la marca en cuestión. 10 LPRA sec. 224.

**III.**

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la *Solicitud de Desestimación* interpuesta por Casa Moderna.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, Towers sostiene que el TPI abusó de su discreción al desestimar la "**Demanda**", aun cuando el Artículo 26 de la Ley de Marcas, *supra*, establece que el tribunal posee jurisdicción exclusiva para resolver las reclamaciones por infracción de marcas y al denegar la solicitud de

orden *ex parte* provisional, contraviniendo el Artículo 30 de la Ley de Marcas, *supra*. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración se desprende que el 20 de agosto de 2024 Towers le envió una carta de cese y desista de uso de marca y nombre comercial a la Apelada, mediante la cual le indicó que el uso de una marca idéntica a la suya está causando confusión entre los consumidores y a su vez, perjudicando su reputación. En respuesta a ello, el 27 de septiembre de 2024 Casa Moderna presentó ante el Departamento de Estado una "**Solicitud de Cancelación de Nombre Comercial**" contra Towers. Mediante dicha acción, afirmó que desde el año 2019 ha empleado el nombre comercial "Casa Moderna", mientras que Towers comenzó a usarla en el año 2021. Por lo tanto, sostuvo que ella lo utilizó con anterioridad a la Apelante y, por tanto, procedía la cancelación del nombre comercial "Casa Moderna" existente a favor de Towers.

Posteriormente, el 11 de diciembre de 2024, la Apelante presentó una *Demanda* por violación de derechos marcarios, nombre comercial, *injuction* preliminar y permanente y daños y perjuicios en contra de la Apelada, alegando que esta había infringido su derecho de marca y del nombre comercial sobre el nombre y logotipo "Casa Moderna". Más adelante, la Apelada presentó una *Solicitud de Desestimación* en la que argumentó que el foro *a quo* carecía de jurisdicción para atender la controversia, ya que existía un procedimiento administrativo de cancelación de nombre comercial pendiente ante la Oficina de Registro de Marcas y Nombres Comerciales del Departamento de Estado. Dicha moción fue declarada "Ha Lugar" por el TPI.

Conforme hemos adelantado en los acápites anteriores, la Ley de Nombres Comerciales, *supra* y el Reglamento Núm. 9584, *supra*, regulan lo concerniente al registro de nombres comerciales en Puerto Rico. Ambas cuerpos normativos establecen que un **usuario previo** de un nombre comercial o cualquier persona que se vea perjudicada por un registro puede reclamar ante el Secretario de Estado la cancelación de un nombre

registrado que pueda generar confusión con el suyo. 10 LPRA sec. 225b. La Ley de Nombres Comerciales, *supra*, también establece expresamente que la Ley de Marcas, *supra*, y sus Reglamentos aplican al registro de nombres comerciales, en la medida en que no sean incompatibles. 10 LPRA sec. 225d.

Cónsono con lo anterior, el Artículo 20 de la Ley de Marcas, *supra*, dispone que las personas que se vean afectadas por una marca registrada pueden solicitarle al Secretario de Estado la cancelación de la misma. 10 LPRA 223q. Finalmente, nuestro máximo foro judicial ha enfatizado que, aunque los derechos sobre una marca pueden adquirirse mediante su registro o uso en el comercio, **el registro pierde fuerza ante una reclamación oportuna de quien demuestre un <u>uso previo</u>, aun si no la ha registrado formalmente**. <u>Federation Des Ind. v. Ebel</u>, *supra*, pág. 624.

El Apelante sostiene que el TPI es el único foro con autoridad exclusiva para conceder los remedios disponibles para un titular registral cuyos derechos de propiedad intelectual están siendo infringidos, al amparo de la Ley de Marcas, *supra*. Así pues, alega que avalar la desestimación del caso implicaría declarar la falta de jurisdicción del foro primario, sin que exista una disposición expresa que lo establezca. Por su lado, la Apelada argumenta que el Tribunal carece de poder para intervenir en el presente pleito mientras no se haya completado el proceso ante la agencia administrativa correspondiente.

Tras un análisis detenido y sosegado del expediente ante nuestra consideración, el cual incluye tanto la *Demanda* como la *Solicitud de Desestimación*, y los documentos que forman parte del legajo ante el Departamento de Estado, hemos arribado a la conclusión de que el TPI carece de jurisdicción para atender la presente controversia en esta etapa procesal. Nos explicamos.

De entrada, tanto la Ley de Nombres Comerciales, *supra*, como la Ley de Marcas, *supra*, disponen que cualquier persona que se considere afectada por el uso de un nombre comercial o una marca que pueda

generar confusión en la mente de los consumidores, tiene el derecho de acudir ante el Secretario de Estado para solicitar la cancelación del registro correspondiente. 10 LPRA sec. 225b y 223q. Por tanto, debemos partir de la premisa de que los remedios o asuntos entre ambos estatutos no son incompatibles. De hecho, la propia Ley de Nombres Comerciales, *supra*, provee para la aplicación de la Ley de Marcas, *supra*. Por tanto, nada impide que se puedan utilizar los criterios de la Ley de Marcas, *supra*, para adjudicar un asunto relativo a la cancelación de un nombre comercial administrativamente, sobre todo cuando la utilización de dicho nombre pudiera crear probabilidad de confusión en el consumidor.

En virtud de dichas disposiciones estatutarias, la Oficina de Registro de Marcas y Nombres Comerciales y los Tribunales de Puerto Rico poseen jurisdicción concurrente en este tipo de asuntos. Al haberse presentado la solicitud de cancelación del nombre comercial en primer lugar ante la Oficina de Registro de Marcas y Nombres Comerciales, corresponde que sea dicho foro el que atienda y resuelva la controversia inicialmente.

En el presente caso, mientras que en el foro administrativo se dilucida una controversia relacionada con un nombre comercial, ante el tribunal se plantea una reclamación de violación al derecho de marcario principalmente, pero igualmente se efectúan alegaciones basadas en la Ley de Nombres Comerciales, *supra*. Aunque reconocemos que se trata de figuras jurídicas distintas dentro del campo legal, ambas se encuentran íntimamente relacionadas, ya que el eje de la controversia en ambos foros gira en torno a la titularidad del uso exclusivo de la frase "Casa Moderna". Lo anterior implica que la decisión adoptada en un foro puede tener efectos directos sobre el otro. Permitir la intervención del tribunal en esta etapa, mientras aún se encuentra en curso un procedimiento sustancialmente similar ante la agencia administrativa competente que fue presentado con anterioridad, podría dar lugar a decisiones contradictorias. Esta preocupación adquiere mayor relevancia ante la alegación presentada por la Apelada en el proceso administrativo, quien sostiene haber comenzado

**a utilizar** el nombre comercial "Casa Moderna" desde el año 2019, es decir, **antes** que la Apelante.

Notamos que, sobre la fecha de inicio del uso de la alegada marca por parte de Tower en el 2021 no existe controversia, pues ha sido dicha parte la que consistentemente ha reconocido que desde ese momento es que utiliza la misma en el comercio en Puerto Rico. Por tanto, de ser cierta y de demostrarse mediante la presentación evidencia que la Apelada usó en el comercio el nombre "Casa Moderna" **antes** que Tower, podríamos estar ante un escenario en el que, si se permiten continuar los procedimientos de la "**Demanda**" que nos ocupa, se correría el riesgo de tener determinaciones inconsistentes. Adviértase que nuestro Tribunal Supremo ha establecido que el registro de una marca o nombre comercial cede ante la reclamación oportuna de quien pueda demostrar un uso previo, aun cuando éste no haya sido formalmente registrado, ello porque se le pueda ocasionar una probabilidad de confusión en el consumidor. Federation Des Ind. v. Ebel, *supra*, pág. 624. Además, no debemos pasar por alto que la agencia administrativa es la que posee el *expertise* necesario para resolver este asunto de manera efectiva. Nótese que la propia Ley de Nombres Comerciales, *supra*, le reconoce la autoridad en ley al Departamento de Estado a crear el Registro de Nombres Comerciales y a regular el mismo. De conformidad con dicha potestad, el Reglamento Núm. 9584, *supra*, dispone que el procedimiento de cancelación de un nombre comercial se debe efectuar ante la agencia.

Finalmente, debemos enfatizar que esta determinación no implica un cierre definitivo de las puertas del foro judicial para el Apelante. En caso de no estar conforme con la determinación final emitida por la agencia administrativa, Towers tendrá la oportunidad de interponer el recurso correspondiente ante los tribunales para su revisión. En consecuencia, procede que agoten los remedios administrativos antes de recurrir ante los foros judiciales. Por tanto, concluimos que no se cometieron los errores esgrimidos.

En suma, no existiendo controversia sobre el hecho de que el procedimiento de cancelación del nombre comercial "Casa Moderna" comenzó con anterioridad al pleito de epígrafe ante el TPI y de que Tower era parte de dicho proceso administrativo, procede cederle la jurisdicción sobre el asunto a dicho foro por ser el ente con la experiencia y autoridad para adjudicar este tipo de reclamo. Sostenemos, asimismo, que al así hacerlo evitamos determinaciones inconsistentes sobre el uso del nombre comercial "Casa Moderna", más aún cuando la Ley de Nombres Comerciales, *supra*, dispone que la Ley de Marcas, *supra*, y sus reglamentos son aplicables en este tipo de procedimiento.

No debemos ignorar que cualquier determinación sobre quién usó el nombre comercial en controversia pudiera tener un efecto sobre el derecho marcario de quien alegue que lo ostenta. Lo anterior, ante el hecho innegable de que ambos estatutos persiguen un mismo fin: evitar la probabilidad de confusión en el consumidor.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones